IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

LEE BOYD MALVO,

PETITIONER,

v.                                          CIVIL ACTION NO. 2:13-cv-375

RANDALL MATHENA,
Chief Warden, Red Onion State Prison,

RESPONDENT.

## REPORT AND RECOMMENDATION

Before the Court is the petitioner Lee Boyd Malvo's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 ("the petition"), ECF No. 1, and the Respondent's motion to dismiss, ECF No. 7. Malvo, by counsel, filed an opposition to the motion to dismiss, ECF No. 13, to which the Respondent replied, ECF No. 17. The motion to dismiss was referred for a recommended disposition to the undersigned United States Magistrate Judge ("undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), E.D. Va. Local Civil Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges. After reviewing the briefs, the undersigned disposes of the motion to dismiss on the papers without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and E.D. Va. Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** the Respondent's motion to dismiss, ECF No. 7, be **GRANTED** and Malvo's petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

## I. BACKGROUND

On October 24, 2002, Malvo was arrested as a suspect in connection with a series of "sniper shootings" that had been occurring for close to two months, in and around the Washington, D.C. metropolitan area.[1]  At the time of his arrest, Malvo was seventeen years old. On January 21, 2003, a grand jury sitting in Fairfax, Virginia indicted Malvo with: (1) capital murder in the commission of an act of terrorism, in violation of Va. Code § 18.2-31(13); (2) capital murder for killing for more than one person within a three-year period, in violation of Va. Code § 18.2-31(8); and (3) using a firearm in the commission of a felony, in violation of Va. Code § 18.2-53.1.  After pleading not guilty, Malvo was tried as an adult, and the jury trial was conducted in the Circuit Court for the City of Chesapeake[2] from November 10, 2003 to December 23, 2003.  The jury found Malvo guilty on all three charges and recommended a sentence of life imprisonment with a $100,000 fine on each of the two capital murder charges,[3] plus an additional three years of imprisonment on the firearm charge.  On March 10, 2004, Fairfax Circuit Court Judge Jane Marum Roush, sitting in the City of Chesapeake, imposed the following sentence on Malvo in accordance with the jury's recommendation: (1) life imprisonment plus a fine of $100,000 on the charge of capital murder in the commission of an

---

[1] From September 5, 2002 until their arrest on October 24, 2002, Malvo and co-conspirator John Allen Muhammad murdered ten people and inflicted gunshot wounds on six others. *See Muhammad v. Commonwealth*, 619 S.E.2d 16, 24-30 (Va. 2005) (summarizing the facts of the case).

[2] While Malvo was originally indicted in Fairfax County, Virginia, defense counsel's motion for a change of venue was granted, and the trial was conducted in the Circuit Court for the City of Chesapeake.

[3] In 2003, under the statute, because Malvo was over 16 years of age at the time of the offense, the jury could have sentenced him to death or life imprisonment. *See* Va. Code § 18.2-10(a) (2004) ("The authorized punishments for conviction of a felony are: For Class 1 felonies, death, if the person so convicted was 16 years of age or older at the time of the offense and is not determined to be mentally retarded . . . or imprisonment for life, and . . . a fine of not more than $100,000."). However, the jury recommended a sentence of life imprisonment. The statute was amended to its current version on July 1, 2006, in response to the United States Supreme Court's decision in *Roper v. Simmons*, 543 U.S. 551 (2005). *See* Va. Code § 18.2-10(a) (2014) ("If the person was under 18 years of age at the time of the offense . . . the punishment shall be imprisonment for life and . . . a fine of not more than $100,000.").

act of terrorism, *see* Va. Code § 18.2-10(a) (2004); (2) life imprisonment plus a fine of $100,000

on the charge of capital murder for killing more than more person within a three-year period, *see*

*id.*; and (3) three years of imprisonment on the charge of using a firearm in the commission of a

felony, *see* Va. Code § 18.2-53.1 ("Violation of this section shall constitute a separate and

distinct felony and any person found guilty thereof shall be sentenced to a mandatory minimum

term of imprisonment of three years for a first conviction . . . . Such punishment shall be separate

and apart from, and shall be made to run consecutively with, any punishment received for the

commission of the primary felony.").   The total sentence imposed was two terms of life

imprisonment plus three years.   Under Virginia law, because Malvo was sentenced to a term of

incarceration for a felony offense committed after January 1, 1995, he is not eligible for parole.

*See* Va. Code § 53.1-165.1 ("Any person sentenced to a term of incarceration for a felony

offense committed on or after January 1, 1995, shall not be eligible for parole upon that

offense.").

Malvo timely filed a notice of appeal to the Court of Appeals of Virginia from the

judgment of conviction.   Even though the Court of Appeals granted Malvo a thirty-day extension

to file his petition for appeal, on September 15, 2004, the case was dismissed because the

petition for appeal was not timely filed.[4]   Malvo never directly appealed this dismissal to the

Supreme Court of Virginia or the United States Supreme Court.   Accordingly, Malvo's

conviction and sentence became final on October 15, 2004, after the time to directly appeal

---

[4] Fifteen days later, however, on September 30, 2004, Malvo filed a "Withdrawal of Appeal," where he stated that he had fully discussed the matter with his attorneys, and had decided to no longer pursue an appeal, and thus, was withdrawing his appeal. This "withdrawal" was seemingly without legal effect and consequence, however, because by the time it was filed, the Court of Appeals had already dismissed his case, and he never appealed that judgment, or requested a rehearing.   Moreover, the dismissal was mandatory for failure to comply with the appellate procedures and rules. *See Long v. Commonwealth*, 375 S.E.2d 368 (1988).

expired. *See* Va. Sup. Ct. R. 5:17(a)(2) ("[A]n appeal from the Court of Appeals [must be filed] within 30 days after entry of the judgment appealed from or a denial of a timely petition for rehearing."). Malvo also never filed a state petition for a writ of habeas corpus, nor had he previously filed a federal petition for a writ of habeas corpus.

On June 25, 2013, Malvo filed the instant habeas petition now before the Court. ECF No. 1. Exactly a year prior, on June 25, 2012, the United States Supreme Court decided *Miller v. Alabama*, and held that mandatory life without parole for homicide committed while the defendant was under the age of eighteen violates the Eighth Amendment's prohibition on cruel and unusual punishment, when the sentencing court is unable to take the offender's youth into consideration in fashioning the sentence. 132 S. Ct. 2455, 2460 (2012). Malvo's sole claim for habeas relief is that the rule announced in *Miller* constitutes a new substantive constitutional rule that applies retroactively to cases on collateral review, or alternatively, a new watershed procedural rule that nonetheless permits retroactive application. On October 9, 2013, the Attorney General of Virginia, on behalf of the Respondent, filed a motion to dismiss, a Rule 5 answer, and a brief in support of the motion to dismiss. ECF Nos. 7-9. On January 3, 2014, Malvo filed a brief in opposition to the motion to dismiss, ECF No. 13, to which the Respondent replied on January 31, 2014. ECF No. 17.[5] As the motion to dismiss is fully briefed, the matter is now ripe for a recommended disposition.

## II. DISCUSSION

### A. Exhaustion and Mootness

In general, a state prisoner like Malvo who seeks federal habeas relief must first

---

[5] In the interim, the Respondent filed a notice of this Court's decision in *Johnson v. Ponton*, 3:13-cv-404 (E.D. Va. Oct. 15, 2013), ECF No. 11, to which Malvo responded, ECF No. 14, and to which the Respondent replied. ECF No. 17. Another such notice was filed on March 24, 2014. *See* ECF No. 18.

demonstrate the he exhausted his claims in the Virginia state courts. 28 U.S.C. § 2254(b)(1)(A); *see also Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) ("The burden of proving that a claim is exhausted lies with the habeas petitioner.") (citation omitted). Exhaustion of state court remedies is a threshold issue that the Court must address before turning to the merits of Malvo's petition, *Day v. McDonough*, 547 U.S. 198, 205 (2006), the purpose of which is to ensure that state courts had a full opportunity to resolve federal constitutional claims before such claims are brought in federal court. *Rose v. Lundy*, 455 U.S. 509, 518 (1982); *see also Ex parte Royall*, 117 U.S. 241, 250 (1886) (discussing exhaustion as a matter of comity, not of jurisdiction). "[T]he exhaustion requirement is satisfied so long as a claim has been 'fairly presented' to the state courts." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).

However, "[b]ecause the rule of exhaustion is one of comity and not of jurisdiction, it is to be applied with flexibility." *Patterson v. Leeke*, 556 F.2d 1168, 1170 (4th Cir. 1977) ("When the state's procedural machinery is rendered ineffective by overly sophisticated technicalities and self-imposed limitations, the federal court should not feel compelled to abstain.") (quoting *Hunt v. Warden*, 335 F.2d 936, 940-41 (4th Cir. 1964)). A federal habeas petitioner is excused from the exhaustion requirement if "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). Under Virginia law, a habeas petition challenging a conviction or sentence other than death must "be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." Va. Code § 8.01-654(A)(2).

5

Malvo's claim under *Miller* is unexhausted because it has not been presented to the Supreme Court of Virginia, either on direct appeal or collateral review. Indeed, Malvo did not directly appeal the dismissal of his appeal from the Court of Appeals to the Supreme Court of Virginia, nor did he previously file a habeas petition in state court. ECF No. 1 at 3-4. However, Malvo argues that "[t]his is precisely the situation contemplated by 28 U.S.C. § 2254(b)(1)(B)(i)-(ii), which permits a petitioner to seek a writ of habeas corpus [in federal court] when state exhaustion is not actually or practically available." ECF No. 13 at 2. The Court agrees. Malvo's conviction and sentence became final on October 15, 2004, when the time to file a direct appeal from the Court of Appeals of Virginia to the Supreme Court of Virginia expired. *See* Va. Sup. Ct. R. 5:17(a)(2); *see also Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied."). Accordingly, under Virginia law, Malvo had until March 10, 2006, or two years from the date of final judgment in the trial court, to file a state habeas petition challenging his conviction or sentence. Va. Code § 8.01-654(A)(2). If he attempted to file a state habeas petition now, it would be dismissed as outside the statute of limitations period by over eight years. Therefore, the Court would find that Malvo's unexhausted *Miller* claim now before the Court is excused, pursuant to 28 U.S.C. § 2254(b)(1)(B), because there is no available avenue of state habeas relief.[6]  *See Johnson v. Ponton*, No. 3:13-cv-404, 2013 WL 5663068, at * 3 (E.D. Va. Oct. 16, 2013).

---

[6] In the alternative, to the extent the Respondent argues that Malvo's claim is simultaneously exhausted and procedurally defaulted, *see* ECF No. 9 at 3 (citing *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (additional citation omitted), the Court would find that any procedural default is overcome by a showing of cause and prejudice, because the legal basis of the claim was not reasonably available to Malvo during the time to file a state habeas, and

The Respondent also argues as a threshold matter that Malvo's claim is not justiciable because no form of relief will change Malvo's parole-ineligible status, due to his convictions in two other jurisdictions. ECF No. 9 at 3. Specifically, after the Fairfax/Chesapeake conviction at issue in this matter, on October 26, 2004, Malvo pled guilty by entering an "Alford plea" to capital murder, attempted capital murder, and two counts of using a firearm in the commission of a felony in the Circuit Court of Spotsylvania County.[7] The same day, he was sentenced to life in prison without parole for the capital murder charge, life in prison without parole for the attempted capital murder charge, three years on the first firearm charge, and five years on the second firearm charge. Subsequently, on October 10, 2006, Malvo pled guilty to six counts of first-degree murder in Montgomery County Circuit Court in Maryland. On November 8, 2006, Malvo was sentenced to six consecutive terms of life imprisonment without parole. Accordingly, the Respondent argues that "even were this Court to grant relief in the instant case, Malvo would still be subject to multiple sentences of life without parole." ECF No. 9 at 4.

While this may be true, this Court has previously recognized that "the Supreme Court has definitively stated that 'a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction.'" *Johnson v. Ponton*, No. 3:13-cv-404, 2013 WL 5663068, at *3 (E.D. Va. Oct. 16, 2013) (quoting *Sibron v. New York*, 392 U.S. 40, 58 (1967)). In *Johnson v. Ponton*, the petitioner filed a federal habeas pursuant to *Miller*, after he was previously convicted on charges of both murder and rape,

---

he was actually prejudiced from his inability to raise the issue. *See Smith v. Murray*, 477 U.S. 527, 537 (1986) ("The question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all."); *see also Murray v. Carrier*, 477 U.S. 478, 494 (1986) (holding in addition to establishing cause for the default, the petitioner must show there was actual prejudice from the inability to raise the issue).

[7] This conviction and sentence is the subject of Malvo's companion habeas petition. *See Malvo v. Mathena*, 2:13-cv-376 (E.D. Va.).

and ultimately sentenced to life imprisonment on each offense. The Respondent argued in that case, as he does here, that the petitioner's claim was moot because even if the district court found in his favor on the *Miller* claim and vacated his life imprisonment sentence on the murder conviction, Johnson would still be serving life in prison for the rape conviction. The district court disagreed, and found that "[w]hile this Court's determination of the merits of Johnson's petition may ultimately have no effect on his imprisonment, it will have an effect on the legal status of Johnson's conviction for murder, if only to determine whether he is constitutionally entitled to resentencing." *Id.* So too, here, even though Malvo is serving eight additional terms of life imprisonment from convictions in other jurisdictions, because the outcome of the instant habeas petition would have an effect the legal status of his Fairfax/Chesapeake convictions and sentences, his claim does not present a moot question. *Johnson*, 2013 WL 5663068, at *3.

### B. Statute of Limitations

Regardless, the Court would find that Malvo's federal habeas petition is time-barred, and thus, the Court recommends that it be dismissed on this basis alone. Under the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), petitions filed pursuant to section 2254 are subject to a one-year statute of limitations period, which shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Unless subsection (C) applies, Malvo's petition is time-barred.[8] The Supreme Court decided *Miller* on June 25, 2012. Malvo filed the petition exactly one year later, on June 25, 2013. ECF No. 1. Accordingly, Malvo's petition is timely only if the rule announced by the Supreme Court in *Miller* has been "made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C).

### 1. The Retroactivity Analysis under *Teague v. Lane*

Newly announced rules by the U.S. Supreme Court apply retroactively[9] to all criminal cases pending on direct review at the time of the announcement. *Teague v. Lane*, 489 U.S. 288, 303-305 (1989) (plurality opinion); *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004) ("When a decision of this Court results in a 'new rule,' that rule applies to all criminal cases still pending on direct review.") (citing *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)). This is not so for convictions that are already final; the new rule "applies only in limited circumstances" to criminal cases on collateral review. *Summerlin*, 542 U.S. at 351. As an initial matter, new

---

[8] Under subsection (A), Malvo's petition would have been time-barred as of October 15, 2005, one year after the judgment of conviction became final when the time for direct appeals expired. Thus, if only subsection (A) applies, Malvo's petition is clearly time-barred. Likewise, Malvo does not raise subsections (B) and (D), and neither section applies. Therefore, Malvo relies solely on subsection (C).

[9] "Indeed, we note at the outset that the very word 'retroactivity' is misleading because it speaks in temporal terms. 'Retroactivity' suggests that when we declare that a new constitutional rule of criminal procedure is 'nonretroactive,' we are implying that the right at issue was not in existence prior to the date the 'new rule' was announced. But this is incorrect. As we have already explained, the source of a 'new rule' is the Constitution itself, not any judicial power to create new rules of law. Accordingly, the underlying right necessarily pre-exists our articulation of the new rule. What we are actually determining when we assess the 'retroactivity' of a new rule is not the temporal scope of a newly announced right, but whether a violation of the right that occurred prior to the announcement of the new rule will entitle a criminal defendant to the relief sought." *Danforth v. Minnesota*, 552 U.S. 264, 271 (2008). "It may, therefore, make more sense to speak in terms of the 'redressability' of violations of new rules, rather than the 'retroactivity' of such rules . . . . Unfortunately, it would likely create, rather than alleviate, confusion to change our terminology at this point. Accordingly, we will continue to utilize the existing vocabulary, despite its shortcomings." *Id.* at n.5 (additional citations omitted).

"substantive" rules apply retroactively to cases on collateral review. *Teague*, 489 U.S. at 311; *Summerlin*, 542 U.S. at 351-52. "This includes decisions that narrow the scope of a criminal statute by interpreting its terms . . . as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Summerlin*, *supra*, at 351-52 (citing *Bousley v. United States*, 523 U.S. 614, 620-21 (1998); *Saffle v. Parks*, 494 U.S. 484, 494-95 (1990); *Teague*, 489 U.S. at 311). New rules classified as substantive "apply retroactively because they 'necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal' or faces a punishment that the law cannot impose on him." *Summerlin*, *supra*, at 352 (citing *Bousley*, *supra*, at 620 (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974))) (internal quotations omitted).[10]

However, under *Teague*, and subsequently, *Summerlin*, a prisoner whose conviction is final generally cannot benefit from a new *procedural* ruling. *Summerlin*, 542 U.S. at 352 (emphasis added). This is because new procedural rules "do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Id.* Accordingly, new procedural rules will only apply retroactively to prisoners on collateral review if the new procedural rule is a "watershed rule of criminal procedure [that] implicat[es] the fundamental fairness and accuracy of the criminal proceeding." *Id.* (citing *Saffle*, *supra*, at 495 (quoting *Teague*, 489 U.S. at 311)). "This class of rules is extremely narrow, and 'it is unlikely that any . . . has yet to emerge.'" *Summerlin*, *supra*, at 352 (citing *Tyler v. Cain*, 533 U.S. 656, 667 n.7 (2001) (quoting *Sawyer v. Smith*, 497 U.S. 227, 243 (1990))) (internal

---

[10] Under *Teague*, this was referred to as an exception to the bar on retroactive application of procedural rules, but is now "more accurately characterized as substantive rules not subject to the bar." *Summerlin*, *supra*, at 352 n.4.

quotations omitted). "In providing guidance as to what might fall within this exception, we have repeatedly referred to the rule of *Gideon v. Wainwright*, 372 U.S. 335 (1963) (right to counsel), and only to this rule." *Beard v. Banks*, 542 U.S. 406, 417 (2004) (citing *Saffle, supra*, at 495; *Gilmore v. Taylor*, 508 U.S. 333, 364 (1993) (Blackmun, J., dissenting)). Accordingly, "it should come as no surprise that we have yet to find a new rule that falls under the second *Teague* exception." *Beard*, 542 U.S. at 417.

To determine whether a new rule applies retroactively to a petitioner's conviction on collateral review, *Teague* sets forth a three-step approach for federal courts to follow: first, determine the date petitioner's judgment of conviction became final; second, ascertain whether the rule announced by the Supreme Court is new; and third, decide whether one of the two exceptions apply, i.e. whether the new rule is substantive, or whether it is a "watershed" rule of criminal procedure. *See Caspari v. Bohlen*, 510 U.S. 383, 390 (1994) (additional citations omitted). Here, first, Malvo's Chesapeake/Fairfax conviction became final on October 15, 2004, when the time to file a direct appeal from the Court of Appeals of Virginia to the Supreme Court of Virginia expired. *See* Va. Sup. Ct. R. 5:17(a)(2); *see also Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied."). Accordingly, his judgment became final long before the Supreme Court decided *Miller* on June 25, 2012, and thus any new rule announced in *Miller* will not be applicable to his case on collateral review unless it falls within an exception. *Teague*, *supra*, at 310-11.

Second, the rule announced in *Miller* is a "new rule" as discussed in *Teague* and

11

*Summerlin*, and as contemplated by 28 U.S.C. § 2244(d)(1)(c).[11] *See, e.g., Nebraska v. Mantich*, --- N.W.2d ---, 287 Neb. 320, 331 (Neb. 2014). "A new rule is defined as a rule that . . . was not '*dictated* by precedent existing at the time the defendant's conviction became final.'" *Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (citing *Saffle v. Parks*, 494 U.S. 484, 488 (1990) (quoting *Teague*, 489 U.S. at 301)) (emphasis in original). The *Miller* rule was not dictated by cases or precedent that existed at the time Malvo's conviction became final in 2004. Rather, *Miller* relied heavily on *Graham*, decided in 2010, *Kennedy*, decided in 2008, and *Roper*, decided in 2005; all three decisions occurred after Malvo's conviction became final. Accordingly, the Supreme Court in *Miller* announced a new rule that will only apply retroactively to Malvo, who is before the Court on collateral federal habeas review, if the new rule is substantive, or a "watershed" rule of criminal procedure, as discussed more fully below. *See Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004). The Court would find that the *Miller* rule does not constitute a substantive rule or a watershed procedural rule. Accordingly, the *Miller* rule should not be applied retroactively to cases on collateral review, and therefore, Malvo's petition should be dismissed as time-barred.

### C. The new rule announced in *Miller v. Alabama*

In *Miller v. Alabama*, the Supreme Court held that the Eighth Amendment forbids sentences of non-discretionary, mandatory life imprisonment without the possibility of parole for individuals who were under the age of 18 years old at the time they committed homicide. 132 S. Ct. 2455. Although the Court did not categorically bar the punishment of life imprisonment without parole for minors, it determined that the sentencing court must consider the offending minor's age and youthful characteristics before imposing such a sentence. *Id.* at 2467, 2471.

---

[11] The Respondent does not contest this characterization, and in fact, agrees. ECF No. 9 at 6 ("[R]espondent agrees *Miller* announced a 'new rule' within the intendment of § 2244(d)(1)(c) . . . .").

Concerned mainly with proportionality of punishment, the Court looked to two lines of precedent to reach this result. *Id.* at 2463. The first line of cases held the Eighth Amendment bar against cruel and unusual punishment categorically banned sentencing practices due to mismatched culpability of a class of offenders and the severity of the penalty imposed. *Id.* (citing *Graham v. Florida*, 560 U.S. 48, 61-62 (2010) (holding unconstitutional a sentence of life imprisonment without parole for a minor who committed a non-homicide offense); *Atkins v. Virginia*, 536 U.S. 304 (2002) (holding the execution of mentally retarded defendants unconstitutional); *Roper v. Simmons*, 543 U.S. 551 (2005) (holding the execution of individuals who were under 18 years of age at the time of their capital crimes unconstitutional); *Kennedy v. Louisiana*, 554 U.S. 407 (2008) (holding unconstitutional the death penalty for non-homicide offenses)). From these cases, the Supreme Court announced that "children are different," and thus, "distinctive attributes of youth" such as lack of maturity, underdeveloped sense of maturity, recklessness, impulsivity, and risky behavior "diminish the penological justifications" for sentencing juveniles to life imprisonment without the possibility of parole, "even when they commit terrible crimes." *Miller*, 132 S. Ct. at 2464-65.

Second, the Court discussed the necessity of the sentencing court to consider the characteristics of a defendant, and the details of the offense, before determining the appropriateness of life imprisonment without parole. *Id.* at 2465-68. Most notably, when discussing *Graham*, the Supreme Court analogized the importance of the sentencing court's ability to recognize the "mitigating qualities of youth," which it cannot do when such a sentence is mandatory. *Id.* at 2467-68. Ultimately, the Court extended the rationale from *Graham*, and found that "[b]y making youth (and all that accompanies it) irrelevant to imposition of that

13

harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." *Id.* at 2469. Therefore, the Court held such mandatory sentences unconstitutional, and required the sentencing court to consider the defendant's "youthful characteristics" when fashioning a sentence. *Id.*

Two appellant petitioners were before the Supreme Court: Evan Miller—who was convicted of capital murder committed when he was fourteen years old and sentenced to life in prison without possibility of parole—was before the Court on direct appeal from the Alabama Court of Criminal Appeals, which affirmed his conviction and sentence. *Miller v. State*, 63 So.3d 676 (Ala. Crim. App. 2010), *cert. denied*, No. 1091663 (Ala. Oct. 22, 2010). Kuntrell Jackson—who was convicted of capital felony murder and aggravated robbery also committed at the age of fourteen years old and sentenced to life in prison without the possibility of parole— was before the Court on collateral review, after the Arkansas Supreme Court affirmed the dismissal of his state habeas petition by the Arkansas Circuit Court. *Jackson v. Norris*, 378 S.W.3d 103 (Ark. 2011). Both the judgment of the Alabama Court of Criminal Appeals, or Miller's direct appeal from his judgment of conviction and sentence, and the judgment of the Arkansas Supreme Court, or Jackson's state habeas and collateral review, were reversed and remanded for proceedings consistent with the Supreme Court's opinion. *Miller*, 132 S. Ct. at 2475. Thus, when considering the retroactivity issue, lower courts ask whether the Supreme Court's indistinguishable application of the *Miller* rule to both petitioners (one on direct review, one on collateral review) is determinative, persuasive, or inconclusive.

In addition to this issue, lower courts must also decide whether the rule in *Miller* is substantive or procedural, and if procedural, whether it can be considered a "watershed" rule of

14

criminal procedure to overcome the general rule that new procedural rules do not retroactively apply to cases on collateral review.  State and federal courts implement the *Teague* analysis to determine whether *Miller* applies retroactively to cases on collateral review.  However, the *Teague* analysis is not binding on state courts, unlike federal courts.  *See Danforth v. Minnesota*, 552 U.S. 264, 287 (2008) (holding a state court is "free to choose the degree of retroactivity or prospectivity which [it] believe[s] appropriate to the particular rule under consideration, so long as [it] give[s] federal constitutional rights at least as broad a scope as the United States Supreme Court requires.") (internal quotations and citations omitted).  Thus, it necessarily follows that any *Teague* retroactivity analysis in federal court will be at least as strict or stricter, and thus, less likely to result in retroactive application of the rule, than any analysis done in state court under the state's particular retroactivity rule.  *See, e.g., In re Gomez*, 199 P.3d 574, 576 n.3 (Cal. 2009) ("Of course, we are free to give greater retroactive impact to a decision than the federal courts choose to give.") (citing *Danforth, supra*, at 287) (additional citation and internal quotation marks omitted).  The Court now turns to a brief summary of the case law from lower courts that have already analyzed the retroactivity of *Miller* to cases on collateral review.

Many lower courts, both state and federal, have considered whether *Miller* announced a new rule that should be applied retroactively, with varying outcomes.  Indeed, there is no consensus among lower courts whether *Miller* is retroactively applied to cases on collateral review.  Generally, in consideration of the issues discussed above, lower courts that hold *Miller* is retroactive on collateral review find that it announced a new substantive rule, or that because the Supreme Court applied the holding to Jackson, a petitioner before the Court on collateral review, the Supreme Court signaled that the rule must be applied retroactively.  Alternatively,

15

lower courts that hold *Miller* is not retroactive find that the new rule was not substantive but instead was a procedural rule that did not rise to the level of a "watershed" rule of procedure for purposes of the *Teague* analysis.

1. Lower courts holding the *Miller* rule should be applied retroactively on collateral review.

First, the following state courts have applied the *Miller* rule retroactively because they found the rule was "substantive," and thus applicable on collateral review. *See, e.g., Ex parte Maxwell*, --- S.W.3d ---, No. AP-76964, 2014 WL 941675, at \*4 (Tex. Crim. App. Mar. 12, 2014) ("We conclude that [the *Miller* rule] is a new substantive rule that puts a juvenile's *mandatory* life without parole sentence outside the ambit of the State's power.") (internal quotations omitted) (emphasis in original); *see also In re Rainey*, --- Cal.Rptr.3d ---, No. A138921, 2014 WL 794354, at \*6 (Cal. Ct. App. Feb. 28, 2014) ("Thus, the *Miller* rule constitutes a new substantive rule, and is not subject to *Teague's* retroactivity bar, because it prohibits a certain category of punishment [life without parole] for a class of defendants [juvenile offenders convicted of homicide] because of their status [chronological age and its hallmark features] or offense.") (citations and internal quotations omitted); *Nebraska v. Mantich*, --- N.W.2d ---, No. S-11-301, 2014 WL 503134, at \*11 (Neb. Feb. 7, 2014) ("In essence, *Miller* amounts to something close to a de facto substantive holding, because it sets forth the general rule that life imprisonment without parole should not be imposed upon a juvenile except in the rarest of cases where that juvenile cannot be distinguished from an adult based on diminished capacity or culpability.") (internal quotation marks omitted); *Toye v. Florida*, --- So.3d ---, No. 2D12-5605, 2014 WL 228639 (Fla. Dist. Ct. App. Jan. 22, 204) (applying Florida's own retroactivity analysis, and not the *Teague* analysis); *Diatchenko v. Dist. Attorney for Suffolk*

16

*Dist.*, 1 N.E.3d 270, 466 Mass. 655, 666 (Mass. Dec. 24, 2013) ("The rule explicitly forecloses the imposition of a certain category of punishment—mandatory life in prison without the possibility of parole—on a specific class of defendants: those individuals under the age of eighteen when they commit the crime of murder."); *People v. Morfin*, 981 N.E.2d 1010, 1022 (Ill. App. Ct. Nov. 30, 2012) ("*Miller* constitutes a new substantive rule . . . . *Miller* mandates a sentencing range broader than that provided by statute for minors convicted of first degree murder who could otherwise receive only natural life imprisonment."); *State v. Ragland*, 836 N.W.2d 107, 115-16 (Iowa Aug. 16, 2013) (holding that although *Miller* mandates a new procedure for sentencing minors, the procedural rule results from a substantive change in the law that prohibits mandatory life without parole sentences for juveniles, i.e. it "bars states from imposing a certain type of punishment on certain people"); *Jones v. Mississippi*, 122 So.3d 698, 702 (Miss. July 18, 2013) ("Prior to *Miller*, everyone convicted of murder in Mississippi was sentenced to life imprisonment and was ineligible for parole. Following *Miller*, Mississippi's current sentencing and parole statutes could not be followed in homicide cases involving juvenile defendants. Our sentencing scheme may be applied to juveniles only after applicable *Miller* characteristics and circumstances have been considered by the sentencing authority. As such, *Miller* modified our substantive law by narrowing its application for juveniles.").

The analysis employed by these courts to arrive at the conclusion that the *Miller* Court announced a substantive rule varies. However, most courts support their conclusion with the proposition that *Miller* altered the substantive law in that it broadened the range of punishment for juveniles convicted of homicide. In other words, before *Miller*, under the state law of the cases cited above, life without parole was mandatory and "automatic" for juveniles who

committed homicide. *See, e.g., Maxwell, supra,* at *4-5. After *Miller*, there is now a range of new outcomes and discretionary sentencing that could result in more lenient sentences, without completely barring imposition of life without parole. *See, e.g., Maxwell, supra,* at *4-5; *Rainey, supra,* at *5-6; *Jones, supra,* at 702 ("By prohibiting the imposition of a mandatory sentence, the new obligation prevents a significant risk that a juvenile . . . faces a punishment that the law cannot impose on him.") (internal citation and quotation marks omitted). Overall, the courts above determined that *Miller* announced a substantive rule that juveniles convicted of murder can no longer face a mandatory sentence of life without parole, and thus, this rule should be applied retroactively because that class of offenders—juveniles convicted of homicide—"face[d] a punishment that the law cannot impose upon him." *See Summerlin,* 542 U.S. at 352 (citing *Bousley, supra,* at 620 (quoting *Davis v. United States,* 417 U.S. 333, 346 (1974))); *see also Penry v. Lynaugh,* 492 U.S. 302, 330 (1989) ("Therefore, the first exception set forth in *Teague* should be understood to cover not only rules forbidding criminal punishment of certain primary conduct but also rules prohibiting a certain category of punishment for a class of defendants because of their status or offense."), *abrogated on other grounds by Atkins v. Virginia,* 536 U.S. 304 (2002). At the same time, however, these courts recognized the procedural aspect of *Miller*, and the fact that the Court did not categorically ban sentences of life imprisonment without parole for juveniles convicted of homicide. *See, e.g., Mantich, supra,* at *10-12 (finding *Miller* contains a procedural component, because it specifically requires that a sentencing court follow a certain process before imposing the sentence of life imprisonment on a juvenile, and the rule does not categorically bar a specific punishment, unlike *Graham* and *Roper*); *Ragland, supra,* at 115-16 (finding *Miller* does mandate a new procedure, "[y]et, the procedural rule for a hearing is

18

the result of a substantive change in the law that prohibits mandatory life-without-parole sentencing. Thus, the case bars states from imposing a certain type of punishment on certain people.").

Similarly, to support this conclusion that *Miller* announced a substantive rule, a few of these decisions also relied on the United States Supreme Court application of the *Miller* rule to Kuntrell Jackson, the companion petitioner before the Court on collateral review, concluding that this suggests the Supreme Court intended the *Miller* rule to apply retroactively to cases on collateral review. *See, e.g., Rainey, supra,* at *5 ("[T]he Supreme Court specifically held the new rule applied not only to the defendant in *Miller,* but also to the defendant in *Jackson* on collateral review . . . . There would have been no reason for the Court to direct such an outcome if it did not view the *Miller* rule as applying retroactively to cases on collateral review."); *Mantich, supra,* at *11 ("We also find it noteworthy that the Court applied the rule announced in *Miller* to Jackson, who was before the Court on collateral review . . . . [W]e are not inclined to refuse to apply the rule announced in *Miller* to a defendant before us on collateral review when the Court has already applied the rule to a defendant before it on collateral review."); *Diatchenko, supra,* at 666-67 ("Our conclusion is supported by the fact that in *Miller* . . . the Supreme Court retroactively applied the rule that it was announcing in that case to the defendant in the companion case who was before the Court on collateral review."); *Morfin, supra,* at 1022-23 ("Our decision is reinforced by the fact that one of the two *Miller* defendants was before the United States Supreme Court on collateral review following completion of his direct appeal and received relief in the same manner as Miller himself."); *Ragland, supra,* at 116 ("The procedural posture of the *Miller* decision further supports retroactive application. . . . . [T]he Supreme Court

19

specifically held the new rule applied not only to the defendant in *Miller*, but also to the defendant in *Jackson* on collateral review . . . . There would have been no reason for the Court to direct such an outcome if it did not view the *Miller* rule as applying retroactively to cases on collateral review."). These decisions used the application of *Miller* to companion case petitioner Jackson before the Court on collateral review to bolster their conclusion that *Miller* announced a substantive rule, not subject to the bar in *Teague*, which should apply retroactively to cases on collateral review.

Lastly, at least two state courts recognized that the *Miller* decision prompted action by their state legislature to amend the substantive law regarding penalties for juveniles convicted of homicide. *See Mantich, supra*, at \*10-12 (discussing the Nebraska legislatures amendment of sentencing laws for juveniles convicted of first degree murder: went from mandatory life imprisonment to a maximum sentence of not greater than life imprisonment and a minimum sentence of not less than forty years, also requiring the sentencing judge to consider mitigating factors); *see also Jones, supra*, at 702 ("When the *Miller* Court announced a new obligation prohibiting the application of our existing substantive law, it modified Mississippi substantive law."). Overall, lower courts that retroactively apply *Miller* on collateral review recognize that the Supreme Court did not categorically ban life imprisonment without parole for juveniles convicted of homicide, but because of the now "broader range" of available punishment, states can no longer impose mandatory life imprisonment without parole, and thus, the new rule is substantive. In short, these courts concluded that the mandatory aspect of the life imprisonment sentence was part of the category of punishment, rather than the procedure by which the sentence

was determined. The decisions discussed below disagree completely, and instead find that

*Miller* is a procedural rule that does not apply retroactively to cases on collateral review.

> 2. Lower courts holding *Miller* does not apply retroactively on collateral review.

On the other hand, some state courts, and the vast majority of federal courts[12] that have

decided the issue, have determined that *Miller* announced a new procedural rule that is not

substantive, and not a "watershed" procedural rule, and thus not retroactively applicable on

collateral review. As an initial matter, these courts recognize that the Supreme Court has not

explicitly made *Miller* retroactive. *See, e.g., In re Morgan,* 713 F.3d 1365, 1367 (11th Cir. 2013)

("The requirement that a new rule be made retroactive on collateral review by the Supreme Court

'is satisfied only if th[e] [Supreme] Court has held that the new rule is retroactively applicable to

cases on collateral review.' And the Supreme Court has not held that *Miller* is retroactively

applicable to cases on collateral review.") (quoting *Tyler v. Cain,* 533 U.S. 656, 662 (2001)).

Moreover, first, unlike the decisions discussed in the previous section, these courts found

that *Miller* is not a substantive rule because it does not "prohibit a certain category of punishment

for a class of defendants," but instead changed the procedure by which a sentencing court may

still impose a sentence of life imprisonment without parole for juveniles convicted of homicide.

*See, e.g., In re Morgan, supra,* at 1367-68 ("*Miller* changed the procedure by which a sentencer

may impose a sentence of life without parole on a minor by requiring the sentence to take into

---

[12] Two federal district courts, sitting in different postures than this Court, have summarily concluded that the *Miller* rule applies retroactively. *See Hill v. Snyder,* No. 10-14568, 2013 WL 364198 (E.D. Mich. Jan. 30, 2013) (holding the *Miller* rule is retroactive to 42 U.S.C. § 1983 plaintiffs not before the court on collateral review, but directly challenging the constitutionality of a Michigan statute as applied plaintiffs that prohibits the Michigan parole board from considering for parole those sentenced to life in prison for first-degree murder). However, the district court would also have concluded that *Miller* is retroactive on collateral review. *Id.* at *2 n.2; *see also Alejandro v. United States,* Nos. 13 Civ. 4364, S4 98 Cr. 290-06, 2013 WL 4574066 (S.D.N.Y. Aug. 22, 2013) (granting petitioner's successive motion to set aside sentence of life imprisonment for conviction of murder in aid of racketeering and related charges committed when petitioner was fifteen years old, pursuant to 28 U.S.C. § 2255, concluding that *Miller* was retroactive on collateral review as a substantive rule).

account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison. And the Court declined to consider a categorical bar on life without parole for juveniles, or at least those 14 and younger.") (citations and internal quotations omitted); *Craig v. Cain*, No. 12-30035, 2013 WL 69128, at *1-2 (5th Cir. Jan. 4, 2013) ("*Miller* does not satisfy the test for retroactivity because it does not categorically bar all sentences of life imprisonment for juveniles; *Miller* bars only those sentences made mandatory by a sentencing scheme. Therefore, the first *Teague* exception does not apply.") (citations omitted); *Thompson v. Roy*, No. 13-cv-1524, 2014 WL 1234498 (D. Minn. Mar. 25, 2014); *Sanchez v. Vargo*, No. 3:13-cv-400, 2014 WL 1165862, at *4-6 (E.D. Va. Mar. 21, 2014); *Contreras v. Davis*, No. 1:13-cv-772, 2013 WL 6504654, at *3 (E.D. Va. Dec. 11, 2013) ("Indeed, the Supreme Court's language indicates that it intended the *Miller* rule to be procedural, rather than substantive.") (citing *Miller*, 132 S. Ct. at 2471 ("Our decision does not categorically bar a penalty for a class of offenders or type of crime—as, for example, we did in *Roper* or *Graham*.")); *Johnson v. Ponton*, No. 3:13-cv-404, 2013 WL 5663068, at *5 (E.D. Va. Oct. 16, 2013) ("The Supreme Court's language indicates that it intended the *Miller* rule to be procedural, rather than substantive."); *Ware v. King*, No. 5:12-cv-147, 2013 WL 4777322, at *3 (S.D. Miss. Sept. 5, 2013) ("For the reasons set forth by the Fifth Circuit in *Craig*, [*supra*], *Miller* is not retroactively applicable to cases on collateral review."); *State v. Tate*, 130 So.3d 829, 837 ("[*Miller*] simply altered the range of *permissible methods* for determining whether a juvenile could be sentenced to life imprisonment without parole for such a conviction, mandating only that a sentence follow a certain process—considering an offender's youth and attendant circumstances—before imposing a particular penalty.") (citations and internal quotations

omitted) (emphasis in original); *Commonwealth v. Cunningham*, 81 A.3d 1, 10 (Pa. 2013)
("Since, by its own terms, the *Miller* holding does not categorically bar a penalty for a class of
offenders, it is procedural and not substantive for purposes of *Teague*.") (citations and internal
quotations omitted); *Chambers v. State*, 831 N.W.2d 311, 328-39 (Minn. 2013) (concluding the
rule in *Miller* is procedural and not substantive because first, the rule does not categorically ban
life imprisonment without parole for juveniles convicted of homicide; second, relevant federal
decisions, i.e. *Craig*, have concluded *Miller* is procedural; and third, unlike *Ring v. Arizona*,
*Miller* does not announce a new element that must be proven); *People v. Carp*, 828 N.W.2d 685,
709-710 (Mich. Ct. App. 2012) ("The *Miller* Court indicated that its ruling was procedural in
nature, stating, 'Our decision *does not categorically bar* a penalty for a class of offenders or type
of crime . . . it *mandates only that a sentencer follow a certain process*—considering an
offender's youth and attendant characteristics—before imposing a particular penalty.") (quoting
*Miller*, 132 S. Ct. at 2471) (emphasis added in original). Overall, this line of precedent concludes
that because *Miller* did not categorically ban a type of punishment for a class of offenders or type
of crime, like the Court did in *Roper* and *Graham*, but instead modified the procedures to
implement such a sentence, the rule is not substantive and must be procedural.   In other words,
the courts concluded that the mandatory aspect of the life imprisonment sentence was not part of
the category of punishment, but rather merely the process by which the sentence was imposed.

Second, while recognizing *Miller* announced a new procedural rule, these courts also
determined that the *Miller* rule is not a "watershed" procedural rule,[13] and thus, should not have

---

[13] Notably, the Court found only one jurisdiction that labeled *Miller* as a watershed procedural rule: Illinois state courts. However, the Illinois state appellate courts are divided over whether *Miller* is substantive, or a watershed procedural rule. The court in *Croft* considered the *Miller* rule a "watershed" rule of criminal procedure, while the same court, but different division, in *Morfin* found it was a substantive rule. *Compare People v. Croft*, --- N.E.2d ---

retroactive application. Generally, the courts reach this conclusion because the Supreme Court rarely recognizes new procedural rules as "watershed" procedural rules. *See, e.g., Chambers, supra*, at 330 ("The Supreme Court has repeatedly emphasized that the watershed exception is extremely narrow, and since its decision in *Teague* has rejected every claim that a new rule satisfied the requirements for watershed status. In fact, the Court has indicated that it is unlikely that any watershed rules have yet to emerge.") (citations and internal quotations omitted). In determining whether the new procedural rule is (1) "necessary to prevent an impermissibly large risk of an inaccurate conviction" and (2) "alter[s] our understanding of the bedrock procedural elements essential to the fairness of a proceeding," *see Whorton v. Bockting*, 549 U.S. 406, 418 (2007), the above-cited decisions conclude that *Miller* fails to meet this high "watershed" standard. *See Craig, supra*, at *2; *Contreras, supra*, at *3; *Johnson, supra*, at *6; *Ware, supra*, at *3; *Tate, supra*, at 841; *Cunningham, supra*, at *10; *Chambers, supra*, at 330-31; *Carp, supra*, at 711-12. The courts recognized that while "*Miller* is certainly profound," *Johnson, supra*, at *6, it does not impact the inherent fairness of the juvenile's criminal proceeding and conviction. The *Miller* rule is unlike *Gideon*, which announced the "right to counsel" rule. Watershed procedural rules like the rule announced in *Gideon* must be given retroactive application because otherwise, "the risk of an unreliable verdict [would be] intolerably high." *Whorton*, 549 U.S. at 419. Instead, the much narrower *Miller* rule deals exclusively with sentencing and produces no effect whatsoever on the juvenile's underlying homicide conviction, let alone an "impermissibly large risk of an inaccurate conviction." *See, e.g., Chambers, supra*, at 330. Accordingly, the above

---

, No. 1-12-1473, 2013 WL 7790528, at *5 (Ill. App. Ct. Nov. 26, 2013)*with Morfin*, 981 N.E.2d at 1022; *cf. People v. Johnson*, 998 N.E.2d 185 (Ill. App. Ct. Oct. 9, 2013) (finding the *Miller* rule to be both a substantive rule and a watershed rule of criminal procedure). Most courts, however, as discussed in this section, determined that *Miller* is procedural, but not a watershed rule.

cited cases concluded that while procedural, *Miller* does not rise to the level of a watershed procedural rule under *Teague*, and thus, does not deserve retroactive application on collateral review.

The undersigned agrees with the latter line of case precedent summarized above, and would conclude, for the reasons discussed and analyzed more fully below, that the *Miller* rule is not substantive, but instead, is a procedural rule that does not implicate the basic principles of fundamental fairness in criminal proceedings. Therefore, the undersigned would find that because *Miller* announced a new, non-watershed, procedural rule, under *Teague*, the Court is barred from applying it retroactively to cases on collateral review, and thus, the undersigned recommends that Malvo's petition be dismissed as time-barred.

**D. The new rule announced in *Miller v. Alabama* does not apply retroactively to Malvo.**

Malvo argues that the *Miller* rule applies retroactively to his case on collateral review as a new substantive rule, or alternatively as a new "watershed" rule of procedure. ECF No. 13 at 4-12. The Court does not agree with either proposition.

### 1. The Supreme Court did not explicitly hold that *Miller* is retroactive.

Before the Court discusses *Miller* under the *Teague* analysis, as an initial matter, a new rule is not "made retroactive to cases on collateral review" unless the Supreme Court holds it to be retroactive. *Tyler v. Cain*, 533 U.S. 656, 663 (2001); *see also United States v. Mathur*, 685 F.3d 396, 401 (4th Cir. 2012) ("The only way to make a new rule retroactive 'is through a holding,' not through dictum.") (quoting *Tyler*, *supra*, at 663-64). The Supreme Court has not held *Miller* is retroactive on collateral review. *See, e.g., In re Morgan*, 713 F.3d 1365, 1367 (11th Cir. 2013) (citing *Tyler*, *supra*, at 663). Much like other petitioners on collateral review,

Malvo asks the Court to assume that because the Supreme Court applied the newly announced rule in *Miller* to companion petitioner Jackson's collateral claim, the Court intended that rule to be retroactively applicable to all cases on collateral review. The undersigned does not agree.

The Supreme Court's decision to apply *Miller* to petitioner Jackson in the companion case before the Court on collateral review is not dispositive of the retroactivity issue, and certainly does not therefore require lower courts to infer that the Court intended *Miller* to be retroactive. *See Johnson*, 2013 WL 5663068, at \*4; *see also Carp*, 828 N.W.2d at 712-13; *Cunningham*, 81 A.3d at 9-10. In *Johnson*, the Richmond division of this Court discussed the Supreme Court's ruling in *Padilla v. Kentucky*, 559 U.S. 356 (2010) (holding the failure to advise an alien defendant of immigration consequences of guilty plea constituted ineffective assistance of counsel). In that case, "the petitioner brought a collateral challenge to his conviction, and in reversing the decision below, the Supreme Court announced a new constitutional rule." *Johnson*, 2013 WL 5663068, at \*4 (citing *Padilla*, 559 U.S. at 374-75). However, even though the petitioner in *Padilla* was before the Court on collateral review, the Court subsequently held that the new rule did not apply retroactively to other cases on collateral review. *See Chaidez v. United States*, 133 S. Ct. 1103, 1113 (2013). Therefore, just because the Court applied the new rule to Jackson, "this Court will not assume that the Supreme Court's application of a new constitutional rule to Jackson's collateral claim necessarily acts as a determination of the *Miller* rule's retroactivity." *Johnson, supra*, at \*4; *accord Tyler, supra*, at 663. Because Malvo is before the Court on collateral review, and the undersigned has already determined, just as all of the courts cited above did, that the *Miller* rule is a "new rule" for

26

purposes of *Teague*, the Court proceeds to discuss why it would find that the new rule is not substantive, nor is it a watershed rule of procedure.

2. Under *Teague*, the new rule in *Miller* is not retroactively applicable on collateral review.

"Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague*, 489 U.S. at 310. Malvo's conviction became final eight years before the new rule in *Miller* was announced. Because the undersigned would find that the new rule is neither substantive, nor a watershed rule of criminal procedure, the new rule in *Miller* does not apply retroactively to Malvo.

i. *Miller did not announce a new substantive rule, as defined by Teague.*

First, "[n]ew *substantive* rules generally apply retroactively." *Summerlin*, 542 U.S. at 351-52 (emphasis in original). Substantive rules apply retroactively because such rules "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal' or faces a punishment that the law cannot impose upon him." *Id.* at 352 (citing *Bousley v. United States*, 523 U.S. 614, 620 (1998) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974))). But that is not the case here. It is undisputed that *Miller* does not affect or "not make criminal" the underlying conduct of Malvo's conviction. Nor does it place Malvo's conduct "or persons covered by the statute [i.e. juveniles convicted of capital murder] beyond the State's power to punish." *Summerlin*, 542 U.S. at 352 (citations omitted). It is also undisputed that, even if Malvo were convicted today as a juvenile of capital murder, after *Miller*, he could still face a punishment of life imprisonment without parole. *See Miller*, 132 S. Ct. at 2471 ("Our decision does not categorically bar a penalty for a class of offenders or type of crime—as, for

example, we did in *Roper* and *Graham*.   Instead, it mandates only that a sentencer follow a certain process—considering an offender's youth and attendant circumstances—before imposing a particular penalty."); *see also Morgan, supra,* at 1191 ("*Miller* does not implicate a substantive categorical guarantee because a juvenile offender may still be sentenced to life imprisonment without the possibility of parole after *Miller*.").

Accordingly, *Miller* did not alter the substantive punishment for juveniles convicted of capital murder in Virginia.   In other words, back in 2004, Malvo did not "face[] a punishment that the law [no longer can] impose upon him." *Summerlin,* 542 U.S. at 351-52 (citations omitted).   Moreover, the explicit language of the Supreme Court's holding indicates that the rule is procedural, rather than substantive: "[I]t mandates only that a sentencer follow a certain *process* . . . ." *Miller, supra,* at 2471 (emphasis added); *see also Johnson, supra,* at *5.   In short, the ultimate outcome, or possible punishment, is the same both pre- and post-*Miller*: juveniles convicted of capital murder in Virginia can be sentenced to life imprisonment without parole. *Miller* only changed the *process* by which the sentencing court must arrive at the juvenile's sentence; specifically, the sentencing court must consider the juvenile defendant's "youthful characteristics" when fashioning a sentence.   *Id.* at 2469, 2471.   Even the courts that have applied *Miller* retroactively as a substantive rule acknowledge that the rule is largely procedural. *See, e.g., Mantich, supra,* at *10 ("As other courts have noted, the *Miller* rule certainly contains a procedural component, because it *specifically requires that a sentencer follow a certain process before imposing the sentence of life imprisonment on a juvenile*.") (emphasis added).   The *Miller* rule did not ban life imprisonment without parole for juveniles convicted of homicide, it only altered the procedures a sentencing court must follow to arrive at such a punishment, and

therefore, the new rule is not substantive. *See Chambers, supra*, at 327 ("In summary, a new rule regarding sentencing is substantive if it eliminates the power of the State to impose the punishment in question regardless of the procedures followed . . . . On the other hand, the new rule is procedural if it regulates the manner in which the State exercises its continuing power to impose the punishment in question.") (citing *Penry*, 492 U.S. at 330; *Lambrix v. Singletary*, 520 U.S. 518, 539 (1997)).

Because *Miller* did not categorically prohibit life imprisonment without parole for juveniles convicted of capital murder, and because it did not "place particular conduct or persons covered by the statute beyond the State's power to punish," *Summerlin, supra*, at 352, the undersigned would find that the rule announced in *Miller* is not a substantive rule as defined by *Teague* and *Summerlin*, and therefore, on that basis, it is not applicable retroactively to cases on collateral review. Rather, the undersigned would find that the *Miller* rule is procedural, but would still decline to apply the rule retroactively to Malvo, who is before the Court on collateral review, because the undersigned would find that the *Miller* rule is not a "watershed" rule of criminal procedure.

*ii. While* <u>Miller</u> *did announce a new procedural rule, it is not a "watershed" rule under Teague.*

New procedural rules "generally do not apply retroactively." *Summerlin*, 542 U.S. at 352 ("[Procedural rules] merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise."). "Because of this more speculative connection to innocence, we give retroactive effect to only a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* (citing *Saffle, supra*, at 495) (quoting *Teague*, 489 U.S. at 311) (internal

quotations omitted). As discussed *supra*, n.13, only one state court has labeled *Miller* as a new watershed rule of criminal procedure. The overwhelming majority of courts who have decided the issue determined that the new rule in *Miller* does not qualify as a watershed rule, because it is not "necessary to prevent an impermissibly large risk of an inaccurate conviction," and because it does not "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Whorton*, 549 U.S. at 418-19 ("*Gideon* [is] the only case that we have identified as qualifying under this exception . . . .").

In *Whorton*, the Supreme Court held that the new rule announced in *Crawford v. Washington*—out-of-court statements by witnesses that are testimonial are barred under the Confrontation Clause, unless witnesses are unavailable and defendants had prior opportunity to cross-examine the witnesses—was not a watershed new rule of procedure and thus not applicable retroactively on collateral review. *Id.* at 419-21 ("The *Crawford* rule is in no way comparable to the *Gideon* rule. The *Crawford* rule is much more limited in scope, and the relationship of that rule to the accuracy of the factfinding process is far less direct and profound . . . . [Moreover], it is apparent that the rule announced in *Crawford*, while certainly important, is not in the same category with *Gideon*. *Gideon* effected a profound and sweeping change."). So too, here, while an important procedural development in criminal law, the rule in *Miller* "simply lacks the primacy and centrality of the *Gideon* rule, and does not qualify as a rule that altered our understanding of the bedrock procedural elements essential to the fairness of a proceeding . . . ." *Id.* (citations and internal quotation marks omitted); *see also Johnson, supra*, at *6. Again, in short, the Supreme Court has only recognized one rule—a criminal defendant's right to

assistance of counsel—to be so fundamental to the fairness of a criminal proceeding to qualify as a "watershed" procedural rule.

Here, *Miller* announced a new rule regarding procedures sentencing courts must follow before imposition of life imprisonment without parole for juveniles convicted of homicide, mainly, that the sentencing court consider their youthful attributes before imposing the harshest punishment available. First, this rule in no way implicates the accuracy of the juvenile's underlying conviction; it simply is inapplicable to the first test for a watershed rule—necessary to prevent an impermissibly large risk of an inaccurate conviction—because the new rule solely impacts the sentencing procedure, after a conviction has been obtained. Nor does the new rule alter our most basic understanding of fairness in criminal proceedings, the second and last test for a new watershed rule. As discussed above, the Supreme Court has recognized only *Gideon* as qualifying as such a "sweeping rule" that "alter[s] our understanding of the bedrock procedural elements essential to the fairness of a proceeding." Accordingly, the undersigned would find that the new rule announced in *Miller* is not a "watershed" procedural rule as defined by *Teague* and *Summerlin*, and therefore, the new rule does not apply retroactively to Malvo, who is before the Court on collateral review.

In conclusion, the undersigned would find that the *Miller* Court did announce a new rule of criminal procedure. The undersigned would also find that Malvo's conviction became final in 2004, and he now petitions the Court for collateral relief. However, under *Teague*, the undersigned would find that the new rule is not substantive, nor is the new rule a watershed procedural rule. Therefore, the undersigned recommends that the new rule in *Miller* not apply

31

retroactively to Malvo, and thus, his petition for habeas relief under section 2254 should be dismissed as time-barred by the statute of limitations.

## III. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** the Respondent's Motion to Dismiss, ECF No. 7, be **GRANTED** and Malvo's Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE** as time-barred by the statute of limitations.

## IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to counsel of record for the parties.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
April 2, 2014

33

## <u>CLERK'S MAILING CERTIFICATE</u>

A copy of this Report and Recommendation was mailed on this date to the following:

Mr. Craig S. Cooley
3000 Idlewood Avenue
Richmond, Virginia 23221
Counsel for the Petitioner

Mr. Michael S. Arif
Arif & Associates PC
3975 University Drive, Suite 360
Fairfax, Virginia 22030
Counsel for the Petitioner

Mr. Donald E. Jeffrey, III
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Counsel for Respondent

Fernando Galindo,
Clerk of Court

By: _____

Deputy Clerk
April 3, 2014